UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JERRY W. MOORE,

        Plaintiff,

    v.                                    21-CV-1160-LJV
                                           DECISION & ORDER

NIAGARA FRONTIER
TRANSPORTATION AUTHORITY, INC.,
*et al.*,

        Defendants.
_____

On October 27, 2021, the *pro se* plaintiff, Jerry W. Moore, filed a complaint asserting claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1983, and New York State law.[1] Docket Item 1. Moore brings those claims against the Niagara Frontier Transportation Authority, Inc. (the "NFTA"), and three of its officials and employees: Executive Director Kimberley Minkel, Systems Manager Patricia

---

[1] Moore also invokes the Fair Housing Act ("FHA"), *see, e.g.*, Docket Item 1 at ¶¶ 47-49, 52, which "prohibits discrimination against [disabled] persons in the availability and terms and conditions of real-estate transactions," *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 502 (S.D.N.Y. 2015), and its related regulations. But none of Moore's allegations relate to real estate or housing, and Moore does not allege that the defendants have anything to do with real estate or housing. *See generally* Docket Item 1. Moore's FHA claims therefore are dismissed without leave to amend because amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Likewise, Moore's claims asserted under Title VII of the Civil Rights Act, *see* Docket Item 1 at 3, which prohibits employment discrimination, *Felder v. U.S. Tennis Assoc.*, 27 F.4th 834, 841 (2d Cir. 2022), are dismissed without leave to amend because Moore's allegations are unrelated to any employment he held or was denied. *See generally* Docket Item 1.

Wiseman,[2] and Paratransit Driver Tamara Turner. *Id.* He alleges that the defendants discriminated against him on the basis of disability and race in connection with his use of the NFTA's Paratransit Access Line ("PAL") service.[3] *Id.*

On May 5, 2022, the defendants moved to dismiss the complaint and for summary judgment, Docket Item 11; on May 31, 2022, Moore responded, Docket Item 14; and on June 14, 2022, the defendants replied, Docket Item 15.

For the reasons that follow, the defendants' motion—which this Court construes as a motion for summary judgment—will be granted unless Moore files an amended complaint correcting the deficiencies identified below.

## **BACKGROUND**[4]

The NFTA's PAL service is a "curb-to-curb, lift-equipped van service" that "is available for qualifying individuals." Docket Item 1 at ¶ 35. Moore—a Black, disabled

---

[2] Moore incorrectly named Wiseman as "Patricia Riseman." *See* Docket Item 11-1 at 4 (correcting the spelling of Wiseman's name).

[3] "Paratransit services are public transportation services for disabled users." *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 112 (2d Cir. 2011).

[4] The following facts are taken from the complaint, Docket Item 1, and the defendants' statement of undisputed material facts, Docket Item 11-2. All disputed facts are viewed in the light most favorable to Moore, *see Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (on a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party), and undisputed facts are deemed admitted, *see* Loc. R. Civ. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of [a] motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement [of material facts].").

Some capitalization, emphasis, and quotation marks are omitted in quotations taken from the complaint.

man who uses a wheelchair, *id.* at ¶¶ 1-2—has been approved to use PAL service since 2017, *see id.* at ¶ 3; Docket Item 11-2 at ¶¶ 1-3.  Between June 2017 and April 2022, Moore used PAL service more than 200 times.  Docket Item 11-2 at ¶ 6 (citing Docket Item 11-3 at 28-32).  But Moore takes issue with several experiences he had while using or attempting to use PAL service, and he alleges that those experiences amount to a "pattern or practice" of discrimination.  Docket Item 1 at ¶ 66.

I.     **THE DECEMBER 2019 INCIDENT**

On or about December 16, 2019, Moore arranged for PAL to transport him home from an appointment.  *See id.* at ¶ 58.  When the appointment "ended earlier than expected," Moore attempted to call the PAL reservation line twice to cancel his scheduled transportation.  *Id.*  But both times Moore called, "the telephone just rang and rang[,] so [Moore] disconnected the call."  *Id.* at ¶ 60.  While he made the calls, Moore was outside "in the evening cold weather."  *Id.* at ¶ 61.  His "legs started to freeze" and he "began to shiver."  *Id.*

An NFTA bus driver told Moore that a nearby bus line could drop him off near his home, so Moore took that bus instead of waiting for PAL transportation.  *Id.* at ¶ 59.  To add insult to injury, the NFTA apparently logged Moore's missed PAL ride as a no-show or late cancellation.[5]  *See id.* at ¶¶ 62-63.  But that did not result in a suspension of

---

[5] The defendants explain that "[a] late cancel is a trip cancelled less than two [] hours prior to the start of the scheduled pick[-]up window."  Docket Item 11-2 at ¶ 31 (citing Docket Item 11-3 at 13).  "No-shows and/or late cancels . . . bec[o]me ineffective for penalties from a customer's record on a rotating six [] month basis."  *Id.* (citing Docket Item 11-3 at 13).

Moore's access to the PAL or any other adverse consequence. Docket Item 11-2 at ¶¶ 32-33.

## II.     THE APRIL 2021 INCIDENT

On April 27, 2021, Moore arranged PAL transportation to a local post office. Docket Item 1 at ¶¶ 64-65. Although Moore had used PAL services to visit that location before, the PAL driver who picked up Moore that day brought him "to an incorrect destination," delaying Moore's errands. *Id.*; *see* Docket Item 11-2 at ¶ 29. The NFTA again charged Moore with a no-show or late cancellation "even though the matter was beyond [Moore's] control," Docket Item 1 at ¶ 65, but the incident did not result in any penalties to Moore, Docket Item 11-2 at ¶¶ 32-33.

## III.    THE JULY 2021 INCIDENTS

On July 6, 2021, Moore arranged PAL transportation to and from a local grocery store. Docket Item 1 at ¶¶ 5, 36. After Moore completed his shopping, he left the store with six brown paper bags of groceries. *Id.* at ¶ 6.

Sometime between 1:30 p.m. and 1:45 p.m., Paratransit Driver Turner arrived to pick up Moore. *Id.* at ¶ 8; Docket Item 11-2 at ¶ 14. As Turner exited the PAL van and began to lower the lift, Moore noticed that there were two white passengers inside the van. Docket Item 1 at ¶ 9. Turner asked Moore where his "aide" was, and Moore said that his aide had broken her leg. *Id.* at ¶¶ 10-11. Turner then said, "I'm not lifting them bags," and she "walked back to the driver side of the van." *Id.* at ¶ 12; *see* Docket Item 11-2 at ¶¶ 18-20 ("Turner . . . informed [Moore] that she was not putting his bags on the van and that he could only bring on board the amount he could hold or carry." (citing Docket Item 11-4 at ¶¶ 6-8)). Turner left the lift lowered but prevented Moore from

4

boarding the van by refusing to "unlock[] the safety belt." Docket Item 1 at ¶ 12. Moore objected to Turner's behavior and the two argued while Turner "sat in the driver['s] seat and, in a very hostile manner, yelled out the doors." *Id.* at ¶ 13; *see* Docket Item 11-2 at ¶ 21 (describing the altercation between Moore and Turner).

Two women passing by the van "decided they would help [Moore] by loading his groceries aboard the van." Docket Item 1 at ¶ 14. But as one of the women attempted to lift one of the bags, "the bag burst and all the groceries inside fell on the ground and scattered over the parking lot." *Id.* at ¶ 15. Turner "allowed one of the [women] to board the van with a grocery bag," but she then "changed her mind and discontinued allowing the bags to be loaded aboard the van."[6] *Id.* at ¶ 17. Turner "yelled out the van doors . . . that she [was] calling the police and not allowing any more bags to be loaded." *Id.* at ¶ 18; *see also* Docket Item 11-2 at ¶ 22 (explaining that Turner called the NFTA Police because she "bec[a]me fearful" of Moore).

Turner then exited the van to raise the lift. Docket Item 1 at ¶ 20. Moore tried to "prevent[] her from raising the lift by placing [the] front wheels of his wheelchair" and his arm on the lift, but Turner continued to raise the lift. *Id.* at ¶¶ 21-23. When Moore "yelled out in pain," Turner "stopped and, again, returned to the inside of the van . . . without successfully raising the lift ramp." *Id.* at ¶ 23.

---

[6] According to the defendants, "[t]he PAL user rules limited all PAL users to no more than two [] bags on each trip." Docket Item 11-2 at ¶¶ 7-8 (citing Docket Item 11-3 at 8-9 (PAL welcome document noting that "customers are allowed two packages that are grocery bag size or similar")). They also note that "[r]iders on [NFTA] fixed route big buses had and have two [] bag per trip limitations comparable to the PAL[] baggage limitations." *Id.* at ¶¶ 10-12 (citing Docket Item 11-3 at 38 (image of sign posted on NFTA fixed route buses indicating a two-bag maximum)).

A short time later, two NFTA Police Officers arrived and spoke to Turner and Moore. *Id.* at ¶ 25; *see* Docket Item 11-2 at ¶ 23.  Moore then called Systems Manager Wiseman, who "indicated that drivers are not required to pick[ ]up grocery bags for riders."  Docket Item 1 at ¶ 26; *see* Docket Item 11-2 at ¶ 24.  Wiseman told Moore than she was "cancelling [his] return trip home with . . . Turner" and that a second PAL van would pick up Moore within 30 minutes.  Docket Item 1 at ¶ 26; *see* Docket Item 11-2 at ¶ 24.  A second PAL van arrived within 30 minutes, and an employee of the grocery store loaded all of Moore's bags onto the van.  Docket Item 1 at ¶¶ 28-29.

The next day, Moore again scheduled a PAL pickup and drop off.  *Id.* at ¶ 30. But when the PAL driver arrived, Moore was told that, according to a "computer-generated" note on Moore's rider profile, the driver could not "take [Moore] anywhere if he did not have his aide with him."  *Id.*  The defendants explain that the "Travel with Aide restriction . . . in [] Moore's file" was "a result of his application documents," Docket Item 11-2 at ¶ 27, which indicated that Moore "requires a Personal Care Attendant (PCA) wherever and whenever necessary to help him," *id.* at ¶ 4 (citing Docket Item 11-3 at 23-26 (Moore's PAL renewal application documents indicating that Moore requires a PCA "to accompany [him] to travel outside the home")).  Nevertheless, Wiseman removed that note after Moore called her to complain that day.  *Id.* at ¶ 28 (citing Docket Item 11-3 at ¶ 18).

## **LEGAL PRINCIPLES**

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ.

6

P. 56(a)). "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)). Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id.*

## DISCUSSION

Moore asserts claims under the ADA, section 1983, and New York State law. Docket Item 1. Each of those claims is subject to dismissal.

**I.     ADA CLAIMS**

Moore invokes Title I, Title II, and Title III of the ADA, Docket Item 1 at 1, 3, but his ADA claims properly arise only under Title II. *See Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) ("The ADA is divided into five separate titles: Title I, 'Employment'; Title II, 'Public Services'; Title III, 'Public Accommodations'; Title IV, 'Telecommunications'; and Title V, 'Miscellaneous Provisions.'" (citation omitted)); *see also* Docket Item 1 at ¶¶ 46-47 (alleging that the defendants denied Moore equal access to "public transportation" and "public non-emergency transportation services").

"Title II of the ADA covers discrimination in the provision of public services and is divided into Parts A and B." *Abrahams*, 644 F.3d at 115 (citing 42 U.S.C. § 12131 *et seq.*). Part B "specifically governs the provision of public transportation services." *Id.* (citing 42 U.S.C. §§ 12141-12165). 42 U.S.C. § 12143 provides:

> It shall be considered discrimination . . . for a public entity which operates a fixed route system . . . to fail to provide with respect to the operations of its fixed route system . . . paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service . . . which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system . . . .

42 U.S.C. § 12143(a). "In response to [section] 12143, the Secretary of Transportation promulgated regulations governing the provision of paratransit services."[7] *Abrahams*, 644 F.3d at 116 (citing 49 C.F.R. §§ 37.131, 37.135, 37.137); *see id.* at 115 ("The Secretary of Transportation has the exclusive authority to issue final regulations implementing Part B."); *see generally* 49 C.F.R. Part 37.

Moore asserts that the service provided by PAL is "not comparable to the level of service provided by" the NFTA's fixed route system for two main reasons. *See* Docket Item 14 at 6 (emphasis omitted). First, he argues that the NFTA's two-bag policy has a disparate impact on people with disabilities. Second, he argues that the service issues he has experienced amount to discrimination on the basis of disability.

---

[7] They Attorney General and the Department of Justice ("DOJ"), on the other hand, have promulgated regulations governing Part A. *Abrahams*, 644 F.3d at 115. Those regulations generally require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

### A. The Two-Bag Policy

Moore asserts that the two-bag policy is a discriminatory "restriction on disabled persons." *Id.* at 9. But as the defendants explain, NFTA fixed route users "have the same baggage limitations" as PAL users.[8] Docket Item 11-1 at 13; *see* Docket Item 11-2 at ¶¶ 10-13; Docket Item 11-13 at ¶ 15. And because the two-bag policy applies to both PAL riders and fixed route riders, the policy is not discriminatory on its face.

But Moore also argues that the two-bag policy has a disparate impact on disabled people because it "mak[es] grocery shopping more difficult and more expensive and burdensome" for people with disabilities. Docket Item 14 at 9, 12-15, 21-22. To establish that a facially neutral policy gives rise to a cognizable claim for disparate impact, a plaintiff must show that the challenged practice or policy has "a significantly adverse or disproportionate impact on persons of a particular type." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003)) (citation and emphasis omitted).

Moore notes that PAL riders must pay $4.00 per ride, while the full fare for NFTA's fixed route buses is $2.00 with various discounts available for seniors and riders who purchase passes. Docket Item 14 at 13; *see* Docket Item 11-3 at ¶ 9. He seems to argue that because PAL riders pay more per trip, the two-bag policy forces PAL riders to spend more money than fixed route riders must spend to transport the same

---

[8] Although Moore asserts that "NFTA local buses for public use do not have a two[-]bag policy or practice in place," Docket Item 1 at ¶ 56, he has not submitted any evidence supporting that assertion. Accordingly, no reasonable juror could resolve that disputed fact in Moore's favor in light of the evidence submitted by the defendants. Moore therefore has not raised an issue of fact as to the applicability of the two-bag policy on fixed route buses.

number of bags, resulting in a disparate impact.  See Docket Item 14 at 12-15, 21-22.  For example, Moore must spend $12.00 to transport six bags of groceries over three trips (3 x $4.00), while a fixed route rider must spend only $6.00 (3 x $2.00)—or less, if the user is a senior or purchases a pass—to transport the same number of bags over the same number of trips.

While that argument has some intuitive appeal, it is squarely foreclosed by the governing regulations.  Under 49 C.F.R. § 37.131,

> [t]he fare for a trip charged to an ADA paratransit eligible user of the complementary paratransit service shall not exceed twice the fare that would be charged to an individual paying full fare (*i.e.*, without regard to discounts) for a trip of similar length, at a similar time of day, on the entity's fixed route system.

49 C.F.R. § 37.131.  Because the $4.00 fare does not "exceed twice" the $2.00 fare, it meets those requirements.  The Court does not doubt the increased cost that the two-bag policy indirectly imposes on disabled people, but the $4.00 fare for PAL service clearly is permissible under the ADA and its regulations.[9]

In short, Moore has not established that the two-bag policy results in service that is not "comparable" to NFTA's fixed route system.  He therefore has not shown that the policy amounts to discrimination under Title II, even when the facts are viewed in the light most favorable to him.

---

[9] It is possible the two-bag policy has a disparate impact on disabled people in other ways.  For example, the policy may be discriminatory if it is not equally enforced on PAL vans and fixed route buses.  But Moore does not make factual allegations suggesting that is the case.  See generally Docket Items 1 and 14.

B.     Service Issues

Moore asserts that the service issues he has experienced amount to a "pattern or practice" of discrimination in violation of the ADA. *See* Docket Item 1 at ¶ 66. This Court disagrees.

As the defendants correctly argue, "Title II . . . and its accompanying regulations do not require perfect paratransit service." Docket Item 11-1 at 12 (collecting cases). In fact, while the paratransit regulations prohibit "[a]ny operational pattern or practice that significantly limits the availability of service to ADA paratransit eligible persons," 49 C.F.R. § 37.131(f)(3), a "pattern or practice" can be established only by "regular[] or repeated actions, not isolated, accidental, or singular incidents," 49 C.F.R. Part 37 app. D ("A missed trip, late arrival, or trip denial now and then does not trigger this provision."). For example, if a paratransit service's "phone lines are always so busy that no one can get through" to make reservations, that would violate the ADA. *Id.* Likewise, a "substantial number" of missed trips also would violate the ADA. *Id.*

Moore used PAL service more than 200 times between June 2017 and April 2022, *see* Docket Item 11-2 at ¶ 6 (citing Docket Item 11-3 at 28-32), and he says that he was provided inadequate service four times during that period, *see generally* Docket Item 1. But those four "isolated" instances of subpar service over a period of more than four years do not amount to "regular" interference with Moore's use of PAL service or a "pattern or practice that significantly limits" Moore's access to PAL service. *See* 49 C.F.R. § 37.131(f)(3); 49 C.F.R. Part 37 app. D; *see also Gustafson v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 29 F.4th 406, 412 (8th Cir. 2022) (plaintiff's alleged "three incidents of discrimination" with regard to paratransit access over eight months were "'frustrating, but isolated instances' which 'do not, without more, establish a

11

violation of the ADA'" (quoting *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 848 (9th Cir. 2001)); *Hulihan v. Reg'l Transp. Comm'n of S. Nev.*, 2012 WL 2060955, at *1-4 (D. Nev. June 7, 2012) (noting that "[t]he regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters" and finding no ADA violation when plaintiff was provided inadequate paratransit service twice in four months (quoting *Midgett*, 254 F.3d at 849).

What is more, it seems that Moore actually was denied service only once, on July 7, 2021.[10]  *See* Docket Item 1 at ¶ 30.  The other incidents he complains about were, at worst, inconveniences with no significant impact or adverse effects.  Moore therefore has not established that the occasional inadequate PAL service he has experienced violated his rights under the ADA.

### C. Other Evidence of ADA Discrimination

Moore raises several other purported bases for his ADA claim, but none withstand scrutiny.

First, Moore asserts that the defendants intentionally discriminated against him and "exclud[ed]" him from using PAL service based on his disability.  *See, e.g.*, Docket Item 1 at ¶ 51; Docket Item 14 at 10-11.  But he provides no facts to support that conclusory allegation.  *See generally* Docket Item 1.  For example, he does not allege that Turner or Wiseman made any comments about his disability, let alone facts suggesting that they treated him adversely because of that characteristic.  Moore

---

[10] Although Moore initially was denied service on July 6, 2021, Wiseman arranged for PAL transportation for Moore—despite his excess baggage—after his interaction with Turner.  *See* Docket Item 1 at ¶¶ 26-29; Docket Item 11-2 at ¶ 24.

therefore has not alleged a viable ADA claim based on a theory of intentional discrimination.

Next, Moore alleges that the defendants failed to make "reasonable modifications" to the NFTA's "rules, regulations, [and] procedures" with regard to PAL cancellation procedures.[11] Docket Item 1 at ¶¶ 53-55, 57, 62. That allegation seems to refer to 28 C.F.R. § 35.130, which provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i).

But any claim that the NFTA is required to make reasonable modifications with regard to PAL service fails: As numerous courts have found, section 35.130's "reasonable modifications" requirement applies only to Part A of Title II—not Part B—and therefore does not apply to paratransit services.[12] Accordingly, paratransit

---

[11] Moore also says that the defendants failed to make "reasonable accommodations." *See, e.g.*, Docket Item 1 at ¶ 48. But the requirement that an entity provide reasonable accommodations to a person with disabilities is found in Title I of the ADA, which prohibits employment discrimination. *See* 42 U.S.C. § 12112.

[12] *See Abrahams*, 644 F.3d at 121 n.10 ("We simply hold that . . . the reasonable modifications requirement of [section] 35.130(b)(7) is inapplicable to paratransit services."); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 675 (5th Cir. 2004) ("The regulations likewise do not impose a duty on [the defendant] to make reasonable modifications of its paratransit service."); *Woods v. Centro of Oneida, Inc.*, 2022 WL 14374734, at *5 (N.D.N.Y. Sept. 19, 2022) ("adopt[ing] the Fifth Circuit's reasoning in *Melton* to conclude that . . . paratransit plans are, themselves, reasonable accommodations to inaccessible fixed route systems under the ADA"); *Cruz v. MTA Long Island Bus*, 2010 WL 9933403, at *7 (E.D.N.Y. May 25, 2010), *aff'd sub nom. Abrahams*, 644 F.3d 110 ("The regulations enacted by the Department of Transportation pursuant to Part B tellingly do not contain any reasonable modification requirements." (citing 49 C.F.R. Part 37)); *see also* 28 C.F.R. § 35.102(b) ("To the extent that public transportation services, programs, and activities of public entities are

providers like the NFTA are not required by the ADA to make reasonable modifications to paratransit services for disabled users,[13] and Moore has not raised a viable ADA claim based on the theory that the NFTA failed to modify its PAL services to accommodate his disability.

In short, Moore has not raised a question of fact as to whether the defendants discriminated against him in violation of the ADA. Nevertheless, and in light of his *pro se* status, *see Cuoco*, 222 F.3d at 112, Moore may amend his complaint to add factual allegations addressing the deficiencies identified above.

## II.  SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the

---

covered by [Part] B of [T]itle II . . . , they are not subject to the requirements of this part.").

[13] Admittedly, the NFTA allows PAL riders to "request a reasonable modification to . . . PAL policy and procedures" and indicates that it will make every effort to implement requested modifications. *See* Docket Item 11-3 at 41 (excerpt from NFTA's website). But that does not create a legal obligation for the NFTA to do so. *Cf. Iverson v. City of Boston*, 452 F.3d 94, 104 (1st Cir. 2006) (holding that the ADA regulations before the court "impose obligations different than, and beyond, those imposed by Title II of the ADA" and therefore "are not enforceable through . . . the private right of action available under that statute").

deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Moore asserts two claims under section 1983: (1) a claim that he was denied access to the courts, *see* Docket Item 1 at 1; and (2) a claim based on the alleged violation of his right to equal protection, *id.* at 3.

### A. Access to Courts

Moore asserts that he has been denied access to the courts, *id.* at 1, but he does not make any factual allegations supporting that conclusory assertion, *see generally* Docket Item 1; *see also Oliver v. City of New York*, 2022 WL 633873, at *2 (S.D.N.Y. Mar. 4, 2022) ("To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury [as a result of being denied access to the courts]." (citation and emphasis omitted)). Moore's access to courts claim therefore is subject to dismissal. But again, in light of his *pro se* status, *see Cuoco*, 222 F.3d at 112, Moore may amend his complaint to add allegations demonstrating that the defendants have denied him access to the courts.

### B. Equal Protection

Moore also alleges that the defendants violated his right to equal protection by discriminating against him based on his race. Docket Item 1 at 3.

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Typically, a plaintiff asserting an equal protection claim "must allege that

15

similarly situated persons have been treated differently." *Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)). But "[a] plaintiff alleging an equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute, generally need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108-09 (2d Cir. 2001).

Moore alleges that Turner discriminated against him in July 2021 when she transported two white passengers but refused to transport him. Docket Item 1 at ¶ 43; *see* Docket Item 14 at 8. And he says that Wiseman discriminated against him that same day by "authoriz[ing] and approv[ing]" the cancellation of Moore's scheduled trip "with no valid justification" when the white passengers already were on the van. Docket Item 1 at ¶ 45.

But Moore has not established that the white passengers were similarly situated to him. More specifically, Moore does not say that the white passengers exceeded the two-bag limit that was Turner's purported justification for denying him transportation. In fact, the defendants assert—and Moore does not dispute, *see* Docket Item 14—that the white passenger or passengers on Turner's van "did not board with excess, unauthorized baggage," Docket Item 11-2 at ¶ 25 (citing Docket Item 11-4 at ¶ 18). What is more, Wiseman eventually arranged PAL transportation for Moore that day, further suggesting that her conduct was not racially discriminatory.

Moore does not make any other allegations suggesting that the defendants discriminated against him based on his race. *See generally* Docket Item 1. He therefore

16

has not asserted a viable equal protection claim, and that claim is subject to dismissal. But again, in light of his *pro se* status, *see Cuoco*, 222 F.3d at 112, Moore may amend his complaint to add specific facts demonstrating that the defendants discriminated against him based on race.

### III.     STATE LAW CLAIMS

Moore asserts claims under both the New York State Human Rights Law and the New York State constitution.  *See* Docket Item 1 at 3.

A district court may decline to exercise supplemental jurisdiction over a state law claim if all claims over which the court had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c).  Accordingly, if Moore does not amend his federal claims and those claims are dismissed, the Court will decline to exercise supplemental jurisdiction over his state law claims and those claims will be dismissed without prejudice without further order.  *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (noting that when deciding whether to exercise supplemental jurisdiction over a state law claim after all federal claims have been dismissed, a court should consider "judicial economy, convenience, fairness, and comity").

### CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment, Docket Item 11, will be granted unless Moore files an amended complaint correcting the deficiencies identified above **within 30 days of the date of this order**.

Moore is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal

17

effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

If Moore does not amend the complaint **within 30 days of the date of this order**, the defendants' motion for summary judgment will be granted and the Clerk of the Court shall close this case without further order.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Moore must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   December 18, 2023
             Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE