UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JERRY W. MOORE,

       Plaintiff,

       v.

NIAGARA FRONTIER
TRANSPORTATION AUTHORITY, INC.,
*et al.*,

       Defendants.

21-CV-1160-LJV
DECISION & ORDER

---

On October 27, 2021, the *pro se* plaintiff, Jerry W. Moore, filed a complaint alleging that the Niagara Frontier Transportation Authority, Inc. ("NFTA"), and three of its officials and employees—Executive Director Kimberley Minkel, Systems Manager Patricia Wiseman,[1] and Paratransit Driver Tamara Turner—discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA") in connection with his use of the NFTA's Paratransit Access Line ("PAL") service.[2]  Docket Item 1.  This Court previously found that Moore's claims were subject to dismissal and gave him leave to amend his complaint, Docket Item 16, which he did, Docket Item 17.[3]  The defendants

---

[1] Moore incorrectly names Wiseman as "Patricia Riseman."  *See* Docket Item 16 at 2 n.2; Docket Item 17 at 1.

[2] "Paratransit services are public transportation services for disabled users." *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 112 (2d Cir. 2011).

[3] In addition to his ADA claims, Moore's original complaint asserted claims under 42 U.S.C. § 1983 and New York State law.  *See* Docket Item 1.  The Court found that those claims were subject to dismissal, Docket Item 16 at 15-17, and Moore does not reassert them now, *see* Docket Item 17, although he includes two seemingly random references to section 1983, *id.* at ¶ 32, and New York State law, *id.* at ¶ 46.  To the extent the amended complaint could be construed as asserting claims under section

then moved to dismiss the amended complaint or for summary judgment, Docket Item 19; Moore responded, Docket Item 21; the defendants replied, Docket Item 22; and Moore filed a sur-reply, Docket Item 23.[4]

For the reasons that follow, the defendants' motion—which this Court construes as a motion for summary judgment[5]—is granted, and Moore's amended complaint is dismissed.

## LEGAL PRINCIPLES

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id.* (first quoting *Anderson v. Liberty*

---

1983 or New York State law, those claims are dismissed for the reasons stated in this Court's previous order.  *See* Docket Item 16 at 15-17.

[4] After that, the defendants filed a letter "request[ing] that the Court disregard" Moore's sur-reply.  Docket Item 24.  Moore then filed a "motion to strike the word 'surre' from the record [sic]."  Docket Item 25 (capitalization omitted).  In light of Moore's *pro se* status, the Court considers Moore's sur-reply.  But Moore's motion to strike, which does not present any clear request for relief, *see id.*, is denied.

[5] This Court previously informed Moore that it intended to construe the defendants' motion as a motion for summary judgment, told Moore that he is "entitled to . . . an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion," and gave Moore an opportunity to file "additional materials or information that he would like the Court to consider in connection with the defendants' pending motion."  *See* Docket Item 26 (citing *Alford v. NFTA-Metro*, 2024 WL 2239014 (2d Cir. May 17, 2024) (summary order)).  Moore did not respond to that text order.

*Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id.*

## DISCUSSION[6]

Moore asserts claims under Title II of the ADA and its accompanying regulations.  Docket Item 17.

"Title II of the ADA covers discrimination in the provision of public services and is divided into Parts A and B."  *Abrahams*, 644 F.3d at 115 (citing 42 U.S.C. § 12131 *et seq.*).  Part B "specifically governs the provision of public transportation services."  *Id.* (citing 42 U.S.C. §§ 12141-12165); *see Woods v. Centro of Oneida, Inc.*, -- F.4th --, 2024 WL 2888492, at *2 (2d Cir. 2024) (describing ADA's statutory framework).  42 U.S.C. § 12143 provides:

> It shall be considered discrimination . . . for a public entity which operates a fixed route system . . . to fail to provide with respect to the operations of its fixed route system . . . paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service . . . which

---

[6] Because the facts alleged in the amended complaint are largely the same as the facts alleged in the original complaint, the Court assumes the reader's familiarity with the facts alleged in those documents, Docket Items 1 and 17; described in the defendants' statement of undisputed facts submitted in support of their first motion for summary judgment, Docket Item 11-2; and recited in this Court's prior order, Docket Item 16 at 2-6.  The Court refers to the facts—including the few allegations new to the amended complaint—as necessary to explain its decision.

is comparable to the level of designated public transportation services provided to individuals without disabilities using such system . . . .

42 U.S.C. § 12143(a).  "In response to [section] 12143, the Secretary of Transportation promulgated regulations governing the provision of paratransit services."[7]  *Abrahams*, 644 F.3d at 116 (citing 49 C.F.R. §§ 37.131, 37.135, 37.137); *see id.* at 115 ("The Secretary of Transportation has the exclusive authority to issue final regulations implementing Part B."); *see generally* 49 C.F.R. Part 37.

Moore bases his ADA claims on (1) the NFTA's "two-bag" policy prohibiting riders using PAL service from transporting more than two bags, and (2) issues he has experienced when using or attempting to use PAL service.  Docket Item 18.  But even viewed in the light most favorable to Moore, the facts cannot sustain an ADA claim.

### I.     THE TWO-BAG POLICY

As this Court previously explained, the two-bag policy "is not discriminatory on its face" because it "applies to both PAL riders and fixed route riders."  Docket Item 16 at 9 (citing Docket Item 11-1 at 13; Docket Item 11-2 at ¶¶ 10-13; Docket Item 11-13 at ¶ 15).  In other words, no rider using NFTA service—whether a PAL rider or a fixed route rider—may transport more than two bags.  Therefore, the Court noted, the two-bag policy violates the ADA only if it has a "disparate impact" on people with disabilities.  *Id.*  And to show a disparate impact, a plaintiff must show that the challenged practice or policy has "a significantly adverse or disproportionate impact on persons of a particular

---

[7] The Attorney General and the Department of Justice, on the other hand, have promulgated regulations governing Part A.  *Abrahams*, 644 F.3d at 115.  Those regulations generally require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(7).

4

type." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003) (citation and emphasis omitted).

Moore asserts that the two-bag policy "has a disproportionate impact on disabled persons" because it is enforced "arbitrarily" and at the NFTA's "discretion[]." Docket Item 17 at ¶ 33. But he offers no facts to support that assertion, such as a specific instance when the two-bag policy was not enforced on an NFTA fixed-route bus.[8] *See* Docket Item 17. Rather, he says that the policy makes it difficult for wheelchair users to complete their grocery shopping in one trip, *id.* at ¶¶ 36, 40-41, and suggests that the NFTA must make "reasonable accommodations" regarding the policy, *id.* at ¶¶ 35, 37-39. But this Court already considered both of those arguments and concluded that they do not establish disparate impact. *See* Docket Item 16 at 9-10, 13-14.

Moore identifies no other facts suggesting "that the two-bag policy results in service that is not 'comparable' to NFTA's fixed[-]route system." *See id.* at 10; *see also* Docket Item 17. "He therefore has not shown that the policy amounts to discrimination under Title II, even when the facts are viewed in the light most favorable to him." *See* Docket Item 16 at 10.

## II.   SERVICE ISSUES

Moore asserts that the service issues he has experienced while using or attempting to use the PAL amount to a "pattern or practice" of discrimination in violation

---

[8] In response to the defendants' motion, Moore hypothesizes that "a driver may be more likely to enforce the [two-bag policy] against a disabled person than a non-disabled person." Docket Item 21 at ¶ 41. That statement is wholly speculative and unsupported by any factual allegations, let alone admissible evidence.

5

of the ADA.  Docket Item 17 at ¶ 51.  As it did previously, *see* Docket Item 16 at 11-12, this Court disagrees.

"Title II and its accompanying regulations do not require perfect paratransit service." *Id.* at 11 (alteration and citation omitted).  In fact, while the paratransit regulations prohibit "[a]ny operations pattern or practice that significantly limits the availability of service to ADA paratransit eligible persons," 49 C.F.R. § 37.131(f)(3), a "pattern or practice" can be established only by "regular[] or repeated actions, not isolated, accidental or singular incidents," 49 C.F.R. Part 37 app. D ("A missed trip, late arrival, or trip denial now and then does not trigger this provision.").  For example, if a paratransit service's "phone lines are always so busy that no one can get through" to make reservations, that would violate the ADA.  *Id.*  Likewise, a "substantial number" of missed trips also would violate the ADA.  *Id.*

As the Court noted previously, "Moore used PAL service more than 200 times between June 2017 and April 2022."  Docket Item 16 at 11 (citing Docket Item 11-2 at ¶ 6; Docket Item 11-3 at 28-32).  Moore's original complaint recounted "four . . . instances of subpar service over [that] period of more than four years."  *Id.*; *see* Docket Item 1.  Because those four experiences were "isolated," the Court determined, they "do not amount to 'regular' interference with Moore's use of PAL service or a 'pattern or practice' that significantly limits' Moore's access to PAL service."  Docket Item 16 at 11-12 (citing 49 C.F.R. § 37.131(f)(3); 49 C.F.R. Part 37 app. D; *Gustafson v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 29 F.4th 406, 412 (8th Cir. 2022); *Hulihan v. Reg'l Transp. Comm'n of S. Nev.*, 2012 WL 2060955, at *1-4 (D. Nev. June 7, 2012)).  "What is more," the Court observed, "it seems that Moore actually was denied service only

once," and "[t]he other incidents he complaints about were, at worst, inconveniences with no significant impact or adverse effects." *Id.* at 12.

Nothing in Moore's amended complaint changes the Court's analysis.  Moore again describes the same four instances of subpar service.  Docket Item 17 at ¶¶ 11-23.  But he does not identify any other times that PAL provided him subpar service, nor does he add any details about the four incidents other than that he received letters or postcards threatening "suspension of services" after two of them.  *Id.* at ¶¶ 14, 16.  And he does not even say that he actually was denied PAL service after he received those notices.  *See* Docket Item 17.

Moore says that PAL reservation line operators "have on many occasions been rude and obnoxious" to him and "are notorious for hanging[ ]up the phone" when PAL users "complain about treatment."  *Id.* at ¶ 50.  But without specific examples of how that impacted Moore's ability to use the system or any suggestion about how often such interactions have occurred, that bald allegation does not establish a pattern or practice of interference with Moore's use of the PAL.

In sum, Moore has not established that the occasional service issues he has experienced amount to a violation of the ADA.

### III.    MOORE'S PURPORTED QUESTIONS OF "MATERIAL FACTS REQUIRING A TRIAL"

Moore has not identified any other facts that might serve as a basis for a Title II claim.  Instead, the amended complaint does nothing more than reiterate the same facts this Court previously found insufficient to sustain an ADA claim.  *See generally* Docket Item 1; *see also* Docket Items 16 and 17.

In several of his filings, Moore identifies purported issues of "material facts requiring a trial."  Docket Item 18; *see* Docket Item 17 at ¶¶ 42-51; Docket Item 21 at ¶¶ 24-47; Docket Item 23 at ¶¶ 6-7.  But despite Moore's characterization of the statements in those filings, he has not raised a genuine issue of material fact.

For example, Moore states: "The claim that the NFTA's [two-bag] policy violates disability rights under laws such as the [ADA] is a central point in dispute."  Docket Item 18 at ¶ 6.  Moore is correct that this case presents the question of whether the two-bag policy violates the ADA.  But that is an issue of *law*, not an issue of *fact*.[9]  That statement—and Moore's other statements involving or identifying issues of law—therefore do not preclude summary judgment.

Moore also "[d]isputes" Wiseman's assertion "that several grocery bags would necessarily require '[m]ultiple [l]oading [t]rips" because, he says, his groceries "could have been placed on the lift" all at once.  *Id.* at ¶ 10.  Whether Moore's grocery bags could have been loaded all at once is indeed a question of fact.  But it does not impact the outcome of the defendants' motion because Moore's six bags of groceries violated the two-bag policy regardless of how long it would have taken to load the van.  In other words, even assuming that Moore is correct about that disputed factual issue, it is irrelevant to the resolution of his claim and the defendants therefore still are entitled to summary judgment.

---

[9] An example of an issue of fact that might be relevant to Moore's claims is whether the two-bag policy is equally enforced on PAL vans and fixed route buses.  *See* Docket Item 18 at ¶ 3.  But Moore has not offered any facts suggesting disparate enforcement, *see* Docket Item 17, so there is no genuine question of fact with regard to that issue.

8

Moore next asserts that "[t]here [was] nothing in [his] file that would indicate that he cannot travel without his aid[e]." *Id.* at ¶ 11; *see id.* at ¶ 14.  But the defendants submitted a copy of Moore's application indicating that he *did* require an aide to travel, Docket Item 11-3 at 23-26 (Moore's PAL renewal application documents, appropriately authenticated as true and accurate business records, indicating that he requires an aide "to accompany [him] to travel outside the home"), and Moore has offered no evidence suggesting otherwise.  Therefore, no reasonable juror could resolve that disputed question of fact—whether Moore's rider profile required him to ride with an aide—in Moore's favor.  Moore's assertion to the contrary—contradicted by the admissible evidence in his file—does not raise a *genuine* issue of fact and therefore does not preclude summary judgment.

In sum, although the Court has carefully reviewed Moore's filings and given Moore the benefit of every doubt, it disagrees with his contention that "several material facts are in dispute that necessitate a trial for resolution."  Docket Item 18 at ¶ 23.  And Moore's accompanying "memorandum of law," which identifies and summarizes various Supreme Court cases about the ADA and disability law in general, does not change that analysis.  *See* Docket Item 18-1 (capitalization omitted).

## **CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment, Docket Item 19, is GRANTED; Moore's motion to strike, Docket Item 25, is DENIED; and Moore's amended complaint, Docket Item 17, is DISMISSED.  The Clerk of the Court shall close this case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Moore must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:  June 26, 2024
        Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE